612 So.2d 1370 (1992)
Randall Scott JONES, Appellant, Cross-Appellee,
v.
STATE of Florida, Appellee, Cross-Appellant.
No. 78160.
Supreme Court of Florida.
December 17, 1992.
Rehearing Denied February 17, 1993.
*1372 Gilbert A. Schaffnit of the Law Offices of Gilbert A. Schaffnit, Gainesville, for appellant/cross-appellee.
Robert A. Butterworth, Atty. Gen. and Barbara C. Davis, Asst. Atty. Gen., Daytona Beach, for appellee/cross-appellant.
PER CURIAM.
Randall Scott Jones appeals the death sentences imposed on him on resentencing. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution, and affirm the sentences.
Seeking to steal Brock's truck, Jones shot and killed Matthew Brock and Kelly Perry while they slept in the truck.[1] A jury convicted him of two counts of first-degree murder, among other things, and recommended that he be sentenced to death, which the trial court did. On appeal we vacated the death sentences because of errors in the penalty phase and ordered that Jones be resentenced. His new jury recommended death for each victim's murder, and the trial court agreed with those recommendations.
Prior to the resentencing proceeding, Jones filed a pro se motion asking that his counsel, Howard Pearl, be dismissed because: 1) Pearl's being an honorary deputy sheriff constituted a conflict of interest; and 2) Pearl's assistance was ineffective because he "only does just enough to maintain appearances" and at Jones' first sentencing proceeding called only one mental health expert to testify and refused to call any of unspecified "numerous character witnesses." This motion did not ask for a hearing on the matter, but sought the dismissal of Pearl and the public defender's office, the appointment of private counsel, and more time. After Jones filed this motion, Pearl moved for permission to withdraw, claiming that Jones' motion and allegations had created an irreconcilable conflict that destroyed the attorney/client relationship. The trial court heard all the parties on these motions and denied Jones' motion because Pearl's "former" status[2] did not create a conflict of interest[3] and held that the claim of ineffective assistance had no merit. The court recognized that Pearl and Jones were having difficulty getting along but denied Pearl's motion to withdraw because the court had never known Pearl to compromise his integrity and because substitute counsel could not match Pearl's knowledge and familiarity with the case. The day the resentencing proceeding began Jones filed a second motion to dismiss counsel, and the trial court summarily denied it. On appeal Jones argues that the court conducted an inadequate inquiry on his motion. We disagree.
In Hardwick v. State, 521 So.2d 1071 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988), we approved the procedure for dealing with motions to dismiss counsel as set out in Nelson v. State, 274 So.2d 256, 258-59 (Fla. 4th DCA 1973):
[W]here a defendant, before the commencement of trial, makes it appear to the trial judge that he desires to discharge his court appointed counsel, the trial judge, in order to protect the indigent's right to effective counsel, should make an inquiry of the defendant as to the reason for the request to discharge. If incompetency of counsel is assigned by the defendant as the reason, or a reason, the trial judge should make a sufficient inquiry of the defendant and his appointed counsel to determine whether or not there is reasonable cause to believe that the court appointed counsel is not rendering effective assistance to the defendant.
Jones did not seek to represent himself; he only wanted the court to appoint someone else to represent him. He based much of his claimed dissatisfaction on Pearl's *1373 having been an honorary deputy. He also claimed that Pearl had been ineffective in the trial and prior sentencing, but made no assertion as to Pearl's effectiveness in the current proceeding.
"Without establishing adequate grounds, a criminal defendant does not have a constitutional right to obtain different court-appointed counsel." Capehart v. State, 583 So.2d 1009, 1014 (Fla. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 955, 117 L.Ed.2d 122 (1992). We agree with the trial court that Jones did not establish adequate grounds. The complaint about Pearl's being an honorary deputy had been resolved because Pearl had resigned that position. Jones' complaints about Pearl's handling of the prior sentencing proceeding do not provide a legal basis for challenging his prospective performance in the resentencing.[4]
We hold that the court conducted a sufficient inquiry into Jones' complaints and Pearl's concerns. The state argued that Pearl was a good attorney, and the trial judge pointed out Pearl's extensive trial experience and stated that he had never known Pearl to compromise his advocacy over a period of thirty years. We find that the refusal to dismiss Pearl was within the court's discretion and that no error occurred.
Jones made two statements to the authorities and moved to suppress them prior to his original trial. We affirmed the trial court's denial of that motion because Jones had not established that he had been denied a request for counsel. Jones v. State, 569 So.2d 1234, 1237 (Fla. 1990). He again moved to suppress those statements prior to resentencing, arguing that documentary evidence shows that a public defender had been appointed to represent him on an unrelated charge and that the statements should not have been taken in the absence of that counsel. The trial court denied the motion to suppress.
A trial court's ruling on a motion to suppress is presumed to be correct. Owen v. State, 560 So.2d 207 (Fla.), cert. denied, 498 U.S. 855, 111 S.Ct. 152, 112 L.Ed.2d 118 (1990); Medina v. State, 466 So.2d 1046 (Fla. 1985). The document Jones relies on to make this claim also shows that Jones pled to the unrelated charge and the court imposed sentence twelve days before Jones committed these murders and more than a month before he made the challenged statements. Invoking one's right to counsel for one crime does not invoke that right for future crimes. Durocher v. State, 596 So.2d 997 (Fla. 1992); see Traylor v. State, 596 So.2d 957 (Fla. 1992). Thus, there is no merit to this claim.
In the original appeal we summarily rejected several claims challenging, among other things, the constitutionality of Florida's death penalty statute and not requiring jurors to use a special verdict form. 569 So.2d at 1238. Jones raises these same claims now, and we reject them again.
Jones' codefendant testified against him at resentencing, and Jones now complains that the judge referred to this witness by his first name and that the judge improperly commented that a prior witness' testimony corroborated that of the codefendant. The following exchange occurred on direct examination when the witness used a map to describe the murder scene:
Q. [by prosecutor] Chris, does this look at all in any way familiar to you with regard to the layout of Rodman Dam? Can you locate yourself on that map?
A. Back over this way [where] the bathrooms were. I believe I was  I believe that's the bathrooms?
The Court: That's correct, according to the previous witness, Mr. Stout.
It is error for a judge to comment on the evidence in the jury's presence. Raulerson v. State, 102 So.2d 281 (Fla. 1958). The contemporaneous objection rules applies to such comments, however, and an appellate court will not reverse in the absence of an objection unless the comment is so prejudicial as to be fundamental error. Ross v. State, 386 So.2d 1191 (Fla. 1980). Here, Jones did not object to the *1374 court's comment, which pertained only to a minor detail of the codefendant's testimony. Neither this comment nor calling the witness by his first name[5] prejudiced Jones or deprived him of a fair trial, and there is no merit to this claim.
During closing argument, the prosecutor said:
I believe a suggestion was made to you that, perhaps, this homicide was not so terrible in the overall scheme or plan of things. As you weigh that and you consider that, ladies and gentlemen, I want you to go back there and think about the effect that period of five seconds (the time period for the firing of three shots) has had on Mr. Jones' life, on Chris Reesh's life [codefendant], on Paul Brock's life [victim]  "
Jones objected to the reference to the codefendant and one of the victims and moved for a mistrial. The trial court denied that motion, and Jones now argues that the comment constituted improper victim-impact evidence and that the prosecutor committed reversible misconduct in making this statement. We disagree.
This is not impermissible victim-impact evidence. Payne v. Tennessee, ___ U.S. ___, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). Even if we assumed, without deciding, that the prosecutor erred in making the statement, no relief would be warranted. The standard for appellate review of prosecutorial misconduct "is whether `the error committed was so prejudicial as to vitiate the entire trial.'" State v. Murray, 443 So.2d 955, 956 (Fla. 1984), quoting Cobb v. State, 376 So.2d 230, 232 (Fla. 1979). This comment did not vitiate the entire trial nor did it "inflame the minds and passions of the jurors so that their verdict reflect[ed] an emotional response to the crime or the defendant rather than the logical analysis of the evidence in light of the applicable law." Bertolotti v. State, 476 So.2d 130, 134 (Fla. 1985). Thus, there is no merit to this claim.
The defense called a mental health expert who testified that he had considered Jones' juvenile, psychiatric, and psychological history in diagnosing Jones as having a borderline personality disorder. On cross-examination the prosecutor questioned the expert about Jones' background and the materials reviewed by the expert and asked him to go through the criteria for antisocial behavior. In response to that questioning, the expert stated that there were references in the record to Jones' skipping class, lying, and stealing. The expert also admitted that the records disclosed that Jones had set his house on fire and that, at Boy Scout camp, he had threatened another camper with a hatchet. Jones now argues that the cross-examination improperly exposed the jury to inflammatory information about his background.
As we have previously stated, "it is proper for a party to fully inquire into the history utilized by the expert to determine whether the expert's opinion has a proper basis." Parker v. State, 476 So.2d 134, 139 (Fla. 1985); Johnson v. State, 608 So.2d 4 (Fla. 1992); see McCrae v. State, 395 So.2d 1145 (Fla. 1980) (one of the objects of cross-examination is to elicit the whole truth of matters that are not fully explained on direct examination), cert. denied, 454 U.S. 1041, 102 S.Ct. 583, 70 L.Ed.2d 486 (1981). The defense opened the door to this testimony through the expert's reliance on Jones' background, and the court did not err in admitting this testimony. Because admitting it did not constitute fundamental error, Jones' failure to object during cross-examination means that the issue is waived.
On the original appeal this Court held that the facts did not support finding the heinous, atrocious, or cruel aggravator. 569 So.2d at 1238-39. At resentencing the prosecutor questioned the medical examiner about whether a wound on the female victim's finger could have been a defensive wound, and defense counsel cross-examined the examiner extensively about the finger wound. The state did not argue the applicability of the heinous, atrocious, or cruel aggravator, and the court did not instruct the jury on that factor. Jones *1375 argues that the testimony about the finger wound was inflammatory and irrelevant, but has demonstrated no abuse of discretion in the trial court's admitting this testimony, and we therefore reject his claim.
The trial court found the following aggravators for Brock's murder: previous conviction of a violent felony (Perry's murder and the other crimes committed against her); committed during an armed robbery combined with committed for pecuniary gain as a single aggravator; and committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. For Perry's murder the court found prior violent felony (Brock's murder and the other crimes committed against him), committed during a burglary, and committed in a cold, calculated, and premeditated manner. The court found that no statutory mitigators had been established. After conscientiously considering the nonstatutory mitigating evidence as to Jones' childhood, his suffering a disorder that impairs his coping skills, and his capability for rehabilitation, the court concluded that it presented little mitigation value. Jones now argues that the court erred in finding cold, calculated, and premeditated and for pecuniary gain in aggravation and improperly doubled the aggravators and that the court erred in refusing to instruct on the statutory mental mitigators and specific nonstatutory mitigators.
As we did on the first appeal, 569 So.2d at 1238, we again find the evidence sufficient to support the cold, calculated, and premeditated and pecuniary gain aggravators. The record shows that Jones coldly and dispassionately decided to kill the victims in order to steal the truck. There is no merit to Jones' argument that he had a pretense of moral or legal justification for the killings because he perceived the victims as part of a world that was rejecting him. Compare Williamson v. State, 511 So.2d 289 (Fla. 1987) (stabbing fellow inmate where victim had made no threatening acts toward defendant, no pretense of justification), cert. denied, 485 U.S. 929, 108 S.Ct. 1098, 99 L.Ed.2d 261 (1988), with Christian v. State, 550 So.2d 450 (Fla. 1989) (colorable claim of self-defense gave pretense of justification), cert. denied, 494 U.S. 1028, 110 S.Ct. 1475, 108 L.Ed.2d 612 (1990); Banda v. State, 536 So.2d 221 (Fla. 1988) (same), cert. denied, 489 U.S. 1087, 109 S.Ct. 1548, 103 L.Ed.2d 852 (1989). Contemporaneous convictions for crimes against multiple victims support finding previous felony conviction in aggravation. Zeigler v. State, 580 So.2d 127 (Fla.), cert. denied, ___ U.S. ___, 112 S.Ct. 390, 116 L.Ed.2d 340 (1991); Tafero v. State, 561 So.2d 557 (Fla.), cert. denied, 495 U.S. 925, 110 S.Ct. 1962, 109 L.Ed.2d 324 (1990); LeCroy v. State, 533 So.2d 750 (Fla. 1988), cert. denied, 492 U.S. 925, 109 S.Ct. 3262, 106 L.Ed.2d 607 (1989). Moreover, the court did not improperly double the felony murder/robbery and pecuniary gain aggravators, but, rather, considered them as a single factor. Any error in the jury instructions, including not telling the jury to merge the pecuniary gain and felony-murder factors if found, is harmless beyond a reasonable doubt. See Suarez v. State, 481 So.2d 1201 (Fla. 1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2908, 90 L.Ed.2d 994 (1986).
The defense's mental health expert specifically testified that Jones did not meet the criteria for the statutory mitigators of substantially impaired capacity or extreme emotional disturbance. That expert also testified that Jones was of at least average intelligence and appreciated the criminality of his actions. Neither alcohol or drug use contributed to these murders. Thus, the record contains competent substantial evidence supporting the trial judge's refusal to instruct the jury on and his refusal to find the statutory mental mitigators. Ponticelli v. State, 593 So.2d 483 (Fla. 1991), reversed on other grounds ___ U.S. ___, 113 S.Ct. 32, 121 L.Ed.2d 5 (1992); Sireci v. State, 587 So.2d 450 (Fla. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1500, 117 L.Ed.2d 639 (1992). Finally, the standard jury instruction on nonstatutory mitigators is sufficient, and there is no need to give separate instructions on individual items of nonstatutory mitigation. Randolph v. State, 562 So.2d 331 (Fla.), cert. denied, 498 U.S. 992, 111 S.Ct. 538, 112 L.Ed.2d 548 (1990); Jackson v. State, 530 So.2d 269 (Fla. 1988), cert. denied, 488 U.S. 1050, *1376 109 S.Ct. 882, 102 L.Ed.2d 1005 (1989).
Therefore, finding no reversible error, we affirm the two death sentences imposed on Jones on resentencing.[6]
It is so ordered.
OVERTON, McDONALD, SHAW, GRIMES and HARDING, JJ., concur.
BARKETT, C.J., dissents with an opinion, in which KOGAN, J., concur.
BARKETT, Chief Justice, dissenting.
I dissent because I believe the trial judge failed to appropriately inquire into Jones's ineffectiveness of counsel allegation.
One month before Jones's resentencing hearing, Jones filed a motion to dismiss counsel. His public defender, Howard Pearl, responded by filing a motion to withdraw. In addition to alleging conflict of interest, Jones's motion generally challenged his counsel's effectiveness and specifically charged that counsel refused to contact or call character witnesses for evidence of mitigation. Pearl, in arguing his motion to withdraw, expressed in no uncertain terms his view that he could no longer serve as an effective advocate for Jones because of Jones's allegations:
[T]o say merely that I am offended or that my feelings are hurt doesn't begin to describe my reaction to it. It is far deeper than that. I want nothing further to do with Mr. Jones... . I cannot quantify the damage that may have been done to me subconsciously or what I might fail to do for him without realizing that I was doing it, that might, in fact, hurt him during the re-trial of this case without intending to or wanting to. But, I feel that Mr. Jones and I, at this stage, very badly need a divorce.
The trial court denied both Jones's and Pearl's motions with virtually no inquiry into the allegations in Jones's motion or his basis for dissatisfaction. The record is devoid, for example, of any reference to Jones's allegations that Pearl failed to contact or call character witnesses. The trial court instead talked at length about how the case was on a "fast track" and how it would be impossible to appoint another attorney who could quickly become prepared. The only inquiry made of Jones by the trial court was whether Jones wished to add anything to his written motion. When Jones responded that he had only forty-five minutes notice of the hearing and had not had a chance to review Pearl's motion to withdraw, the trial judge stated that he intended to rule on the motion and would not consider a continuance.
Jones's second motion to dismiss counsel, which made clear that Jones was challenging Pearl's continuing ineffectiveness, also was denied, and again, the trial judge did not specifically inquire into the allegations in the motion; he only expressed his confidence that Pearl would serve as an effective advocate and would not be compromised. Pearl once again noted that his representation of Jones might not be ideal: "I hope that I haven't, in some way, been impaired in my advocacy in a manner that I, myself, am not aware of."
Finally, at sentencing Pearl again stated that he believed the case may have been infected by a conflict between himself and Jones that "may well have affected its outcome, although I cannot quantify the extent of the damage."
As the majority notes, this Court has explicitly adopted the procedure set forth in Nelson v. State, 274 So.2d 256, 258-59 (Fla. 4th DCA 1973), when assertions such as Jones's are made:
If incompetency of counsel is assigned by the defendant ... the trial judge should make a sufficient inquiry of the defendant and his appointed counsel to determine whether or not there is reasonable cause to believe that the court appointed counsel is not rendering effective assistance to the defendant. If reasonable cause for such belief appears, the court should make a finding to that effect on the record and appoint a substitute attorney who should be allowed adequate time to prepare the defense. If no reasonable basis appears for a finding of ineffective representation, the trial court should so state on the record and advise the defendant *1377 that if he discharges his original counsel the State may not thereafter be required to appoint a substitute.
Hardwick v. State, 521 So.2d 1071, 1074-75 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988) (quoting Nelson, 274 So.2d at 258-59). This procedure clearly was not followed in this case.
Jones's motions raised a number of issues that warranted deliberate inquiry by the trial court. Specifically, the allegation that counsel failed to contact or call character witnesses is relevant considering that no such witnesses were called in the resentencing. In light of Jones's assertions and Pearl's comments, I cannot find that the trial judge adequately addressed the defendant's allegations of ineffectiveness as is required by Hardwick. I would remand for a new sentencing determination before a new jury.
KOGAN, J., concurs.
NOTES
[1] The facts are set out fully in our opinion on Jones' first appeal. Jones v. State, 569 So.2d 1234 (Fla. 1990).
[2] By the time of resentencing Pearl had resigned as an honorary deputy sheriff.
[3] See Harich v. State, 573 So.2d 303 (Fla. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1645, 113 L.Ed.2d 740 (1991).
[4] Allegations as to Pearl's effectiveness at resentencing should be addressed in a motion for postconviction relief. Ventura v. State, 560 So.2d 217 (Fla.), cert. denied, 498 U.S. 951, 111 S.Ct. 372, 112 L.Ed.2d 334 (1990).
[5] The prosecutor and defense counsel, as well as the judge, called the codefendant by his first name, and defense counsel even called him "son."
[6] Due to this affirmance, we do not address the issues raised on cross-appeal.